[No. 16709-0-I. Division One. July 7, 1986.]

DAVID HANSEN, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*

*Douglas N. Jewett, City Attorney,* and *Gordon David-son, Assistant,* for appellant.

*Lawrence Linville* and *Keller, Rohrback, Waldo, His-cock, Butterworth & Fardal,* for respondent.

WEBSTER, J.—The City of Seattle appeals from a summary judgment and order reinstating David Hansen to his former position as a Seattle police officer and awarding him back pay with interest. We reverse.

On November 15, 1978, Seattle Police Officer David Hansen was notified by Lieutenant Bartley and Sergeant Sorenson that some prostitutes had accused Hansen of requesting them to engage in sexual activity with him. On

January 19, 1979, Hansen requested and received a meeting with Captain Anderson to discuss the accusations. On July 12, 1979, the Seattle Police Department's Internal Investigation Section notified Hansen that he was officially charged with misconduct. The allegations of misconduct were that:

> Off. D. Hansen, while in SPD uniform, had prostitutes/runaways perform oral sex in lieu of being arrested, and that further, he threatened them with physical injury if they discussed what he had them do. The conduct of Off. D. Hansen, in this case, has brought discredit to himself and the Department.

On July 26, 1979, Hansen, represented by Douglas Dills from the Seattle Police Officer's Guild, was advised of his *Miranda*[1] rights. After consulting with an attorney, Hansen responded in writing to the Internal Investigation Section's questions regarding the misconduct charges.

On September 12, 1979, Chief of Police Fitzsimons told Hansen he was dismissed for conduct unbecoming an officer. At that time Hansen exercised his right to request a disciplinary hearing.

On October 31, 1979, a Disciplinary Panel hearing was held. Oral testimony was given by two complainants, the mother of one complainant, three police officers, a caseworker, and Hansen. The voting members of the hearing panel unanimously concluded that the preponderance of the evidence supported the allegation, and they recommended that the charge be sustained.

On July 23, 1980, and September 4, 1980, the Public Safety Civil Service Commission held a hearing on Hansen's dismissal. Both Hansen and the City presented witness testimony and other evidence. The Commission concluded that Hansen's actions constituted conduct unbecoming a police officer, in violation of the police department manual, and his dismissal was for good cause shown. The Commission sustained Hansen's dismissal.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1977).

On June 24, 1983, alleging that he was entitled to a pre-termination hearing, Hansen filed a complaint in King County Superior Court against the City for a violation of due process pursuant to the United States Constitution and 42 U.S.C. § 1983, and for a breach of the Collective Bargaining Agreement (CBA). Subsequently, both parties moved for summary judgment. The City was granted summary judgment on the 42 U.S.C. § 1983 claim because it was barred by the statute of limitations. Hansen was granted summary judgment against the City for breach of the CBA. The issue of damages was reserved for trial.

At the bench trial in King County Superior Court, the court ordered: (1) Hansen to be reinstated; (2) Hansen's personnel records to be corrected to reflect the reinstatement; (3) back pay and all benefits to be paid to Hansen since the date of termination, but offset by any income earned by Hansen during that period; and (4) prejudgment interest and costs to be paid to Hansen. The City appeals.

At the outset it is important to note what is not at issue here. This is not a due process case. Although Hansen's complaint alleged a denial of due process rights as well as a breach of the CBA, the City was granted summary judgment on the due process issue, and this decision has not been appealed. Our review is limited to the breach of contract claim.[2]

The City contends that Hansen cannot bring a lawsuit for breach of the CBA because Hansen did not pursue his contractual remedies under the CBA. It is undisputed that Hansen did not seek judicial review of the decision of the Disciplinary Panel or the Commission. Nor did he pursue the grievance procedures under the CBA. Hansen argues that he was not required to pursue any contractual reme-

[2]Accordingly, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 105 S. Ct. 1487, 1495 (1985), in which the Court defined what pretermination process is required by the United States due process clause, is not controlling. The petitioners in *Loudermill*, unlike Hansen, presented due process claims, and construction of the due process clause formed the basis of the Supreme Court's opinion.

dies under the CBA because (1) the CBA's grievance procedures were not applicable to him, and (2) collateral estoppel applies.

Article 3, section 4 of the CBA states:

> Any disputes under this Agreement will first be brought to the attention of the City Personnel Director and Guild President one week before legal action by either party is initiated. Prior to the instigation of any legal action under this Agreement, all matters in dispute shall first be submitted to the Conference Board as provided for in this Agreement for attempted resolution.

The City contends that prior to filing his lawsuit Hansen was required to advise the City Personnel Director, the Guild President and/or the Conference Board of his claim that he was entitled to a pretermination hearing. Where an agreement provides for a method of resolving disputes between the parties, that method must be pursued before either party can resort to the courts for relief. *Tombs v. Northwest Airlines, Inc.*, 83 Wn.2d 157, 516 P.2d 1028 (1973).

■ Hansen claims that the CBA's grievance procedures apply only to "sworn members of the rank of sergeant and below" and that once he was terminated the grievance provisions no longer applied to him. This argument is without merit. If a collective bargaining agreement's provisions could be nullified by termination of the employee, employers could virtually escape all application of a collective bargaining agreement by merely firing their employees when a labor dispute occurred.

At the summary judgment hearing Hansen alleged that the City had breached the CBA first by refusing to allow him his contractual right to a pretermination hearing. Appendix A contains the disciplinary hearing procedure. It provides:

> (a) When any report of violation of Seattle Police Department rules and regulations lodged against a member has been classified as sustained and so reported to the Chief of Police and the Bureau Commander of the accused, and penalty for that

infraction may result in suspension, demotion or dismissal, the Bureau Commander of the accused police officer shall immediately notify him of such fact, together with his disciplinary recommendation and his right to a disciplinary hearing, provided such right is exercised within forty–eight (48) hours.

(b) The accused has forty–eight (48) hours from the time of notification in which to waive or exercise his right to a disciplinary hearing. In such cases a disciplinary panel may be convened by the Chief of Police despite such waiver if such a review is desired before finalizing a disciplinary decision. The accused shall notify his commanding officer within forty–eight (48) hours, otherwise he will be deemed to have waived his right to a disciplinary hearing. At this time the waiver may not be rescinded; provided, however, that in those cases where the accused has waived his right to a disciplinary hearing, following notification by his Bureau Commander of his disciplinary recommendation, the accused shall have forty–eight (48) hours to request such a hearing, following notification of the disciplinary decision made by the Chief of Police if the penalty imposed by the Chief of Police exceeds that recommended by the Bureau Commander. If the accused exercises his right to a disciplinary hearing, he shall have adequate time to prepare his defense after he has been fully informed of the nature of the charges that have been lodged against him.

(c) The appropriate command will notify the Internal Investigation Division that the accused has waived his rights.

However, article 3, section 1 provides:

Section 1. The parties agree that discipline is a command function, and that the Department may institute a disciplinary procedure. So much of said procedure that relates to the right of an employee to a hearing and the mechanics thereof are attached as Appendix "A" and incorporated into this Agreement by this reference; provided, however, that *notwithstanding the hearing procedure enumerated in Appendix "A" it is understood that if deemed appropriate by the Chief of the Department discipline or discharge may be implemented immediately.*

(Italics ours.) Thus, on its face the CBA does not require a *pretermination* hearing in every instance.

Notwithstanding the fact that the CBA does not guarantee Hansen the right to a pretermination hearing, Hansen argues the City is collaterally estopped from making this argument because the issue was fully litigated in *Punton v. Seattle Pub. Safety Comm'n,* 32 Wn. App. 959, 650 P.2d 1138 (1982).

In *Punton,* the chief of police dismissed Officer Punton before advising Punton of the charges against him or affording him a hearing. Subsequently, the chief's decision was reviewed by Seattle Police Department disciplinary panels. The panels sustained three of the four charges but recommended suspension instead of dismissal. The chief adhered to his earlier decision to dismiss Punton. *Punton,* at 960.

Punton appealed to the Commission arguing that the City's failure to provide him with a pretermination hearing violated his constitutional rights to due process. The Commission affirmed the chief's decision. Thereafter, Punton obtained a writ of certiorari to the superior court. *Punton,* at 960. The trial judge found that a pretermination hearing was required by the department policy manual and the CBA and that omission of the hearing violated Punton's state and federal constitutional rights to due process. *Punton,* at 961.

The City appealed and this court accepted review in *Punton v. Seattle Pub. Safety Comm'n, supra.* We found no constitutional due process violation, but held that the department manual required a pretermination hearing. *Punton,* at 965–67.

■ The doctrine of collateral estoppel prevents a second litigation of issues between parties even though a different claim or cause of action is asserted. *Rains v. State,* 100 Wn.2d 660, 674 P.2d 165 (1983). Before collateral estoppel is applicable affirmative answers must be given to the following questions:

1. Was the issue decided in the prior adjudication identi-

cal with the present issue?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the former adjudication?

4. Will application of the doctrine not work an injustice on the party against whom the doctrine is applied? *Rains,* at 663.

Hansen claims that the issues in *Punton* and in this case are the same and that there is a final judgment on the merits. We disagree. In *Punton* this court stated that "[a]lthough resolution of this case on nonconstitutional grounds *might* have been possible, . . . the parties have elected to present this case to the trial judge and to this court solely on constitutional grounds." *Punton,* at 965 n.5. The issue in *Punton* was whether the officer's due process rights had been violated. The issue in the case sub judice is solely whether the City breached the CBA; there is no due process claim.

Furthermore, in *Punton* we held that the department manual required a hearing; we did not address the CBA. In this case, Hansen alleged only a breach of the CBA, not the policy manual. Thus, *Punton* is distinguishable and does not estop the City from arguing in this case that the CBA provides Hansen no right to a pretermination hearing.

On appeal, Hansen seeks to incorporate the language of the policy manual into the CBA. However, section 1 of article 20 of the CBA provides: "The Agreement expressed herein in writing constitutes the entire Agreement between the parties". Collective bargaining agreements are governed by the ordinary rules of contract law. *Barclay v. Spokane,* 83 Wn.2d 698, 521 P.2d 937 (1974). Where the intention of the parties is clear from the written contract, the courts have nothing to construe and the contract language controls. *Grant Cy. Constructors v. E.V. Lane Corp.,* 77 Wn.2d 110, 459 P.2d 947 (1969).

We find that the City did not breach the CBA because Hansen was not contractually entitled to a pretermination hearing under the CBA. This being the case, Hansen was

222

required to pursue his contractual remedies under the CBA or seek judicial review of the Disciplinary Panel and/or Commission decision. Having failed to do this, he is precluded from resorting to the courts for relief.

The summary judgment in favor of Hansen is vacated, and his complaint shall be dismissed.

SWANSON, J., and JOHNSEN, J. Pro Tem., concur.

Review denied by Supreme Court October 7, 1986.