[No. 39819.    Department One.    May 29, 1969.]

THE CITY OF VANCOUVER, *Respondent,* v. ERWIN JARVIS *et al.,*
*Appellants.**

*Reported in 455 P.2d 591.

*Kenneth W. Weber* and *Read, Church & Kleweno*, for appellants.

*Jerry F. King*, for respondent.

McGovern, J.—This appeal is taken from a ruling of the trial court sustaining a civil service commission finding that three Vancouver police officers were justifiably removed from police employment.

Vancouver is a city of the first class with a city manager-council directed administration. Its policemen are civil service employees and it has a civil service commission. At all times material hereto, John E. Slayton was the city manager and Edward Mayo the chief of police.

May 1, 1965, police officers Lieutenant Mills and patrolmen Jarvis and Skaaden were on duty at the police headquarters. About 3 o'clock that morning a supply of plastic ammunition was wrongfully taken from the office of a patrol captain and the three officers fired several rounds of it at selected targets within the department radio room and adjoining hallway. A 1965 monthly date calendar, one of the targets, was later shown to bear 26 bullet holes; 30 other bullet holes were found in the woodwork and door frames. One shot disabled a typewriter.

When later questioned by their superiors about the matter, each of the officers initially denied knowledge of the event but later admitted being participants. A police department disciplinary board, an unofficial investigating body, was then convened, and it considered all evidence submitted to it, including the testimony of appellants. The board recommended to the chief of police that the three officers be dismissed from the force and, on May 12, Chief Mayo made that written recommendation to the city manager. Mr. Slayton approved and directed that each of the appellants be given a letter of dismissal. Those letters bearing an effective date of May 13 were signed by Chief Mayo and delivered by him to the appellants on that date. Each appellant was also given a copy of the disciplinary board's recommendation for dismissal as well as a copy of the chief's recommendation which bore Mr. Slayton's endorsement that "As City Manager and appointing officer, I approve and concur in the action taken by the Chief of Police in the above case."

May 25, Mr. Slayton, as the appointing power, signed and had served on each of the appellants a notice of dismissal from the police department, effective May 26. The reason assigned for the discharge was "for conduct unbecoming an officer" that concerned their "participation in the shooting of plastic ammunition in the Vancouver Police Station at approximately 3:00 A.M., May 1, 1965." Appellants were advised to disregard the earlier letter of dismissal from the chief of police and to consider the letter of May 25 as the order of discharge.

Each appellant thereafter requested the Vancouver Civil Service Commission to investigate his discharge and to determine if his discharge was or was not made in good faith for cause.[1] Several hearings were held and each appellant was represented by legal counsel. After testimony was taken and other evidence received, the commission entered formal findings and concluded that the dismissals were

---

[1] The investigation was requested under authority of RCW 41.12.090 the City of Vancouver having adopted RCW 41.12 in the year 1937 by city ordinance No. 1596.

made in good faith for cause and were not made for political or religious reasons. Appellants then gave timely notice of appeal from that order to the Superior Court for Clark County where the matter was heard upon the record. The trial court considered the extensive written and oral argument of counsel, stipulations, the statement of facts from the commission hearing and then entered its order affirming the commission finding that the discharges were made in good faith for cause. This appeal is taken from that order.

The assignments of error are many in number and are considered seriatim. It is first claimed that improper service of the city manager's written accusation was made on the appellants—not as required by the applicable statutes, city charter, ordinance and civil service rules and regulations. Each such statute and ordinance, it is argued, and specifically RCW 4.28.070, requires that service of process be made by a person other than a plaintiff. Two of the appellants were served by the chief of police and the third by another member of the police department, each of whom it is claimed is a party plaintiff. We hold that the persons who effected service of process on the appellants are not *plaintiffs*. As that word is used in the statute, it signifies a person who seeks remedial relief for an injury to his rights; it designates a complainant. Neither Chief Edward Mayo nor any other member of the police department had the right to claim legal redress from appellants for any reason stated in the accusation charge, and no right of theirs had been derogated. They were not the complainants. The object and purpose of the written statement was to notify each employee of his discharge and the reasons therefor, and the notice each employee received fully accomplished that object and purpose. We conclude that the service of process here on each of the three appellants satisfied the legal requirements. *See State ex rel. Miller v. Tacoma,* 177 Wash. 689, 33 P.2d 88 (1934).

It is next claimed that each appellant was dismissed by a person who did not possess the power to discharge. It is said that appropriate statutes and ordinances require that a

discharge from civil service employment be only upon the written accusation of the appointing power. While it is admitted that Mr. Slayton was the appointing power and that he had signed the letters of dismissal, nonetheless it is further argued that since he had lawfully delegated that authority to the chief of police, he was therefore without the right to terminate appellants' services.

■ The civil service commission specifically declared that Mr. Slayton had not delegated that authority. One of its findings stated that "the appointing power in the City of Vancouver Police Department is and at all pertinent times has been John E. Slayton, City Manager; [and] that he had never authorized the Chief of Police to remove subordinates in such Police Department." Our examination of the record discloses substantial competent testimony by both the city manager and the chief of police to support that finding. We will not, therefore, attempt to substitute our judgment for the independent judgment of that commission. *State ex rel. Perry v. Seattle*, 69 Wn.2d 816, 420 P.2d 704 (1966).

■ In their next assignment of error, appellants aver that the Vancouver Civil Service Commission failed to adopt suitable rules and regulations providing for the discharge, removal, suspension or demotion of civil service employees, and that it failed to adopt necessary rules of procedure pertaining to the hearing before the commission as contemplated by RCW 41.12.040. For the reasons now stated we find otherwise: Vancouver ordinance No. 1596, § 2 provides, among other things, that a civil service employee may not be removed, suspended, demoted or discharged except for cause and upon the written accusation of the appointing power; the employee is entitled to be served with a copy of the accusation; he is entitled to a hearing before the civil service commission; the commission must decide whether the action taken was or was not made for political or religious reasons, or was or was not made in good faith or for cause; the investigation by the commission must be by public hearing, and the employee is entitled to reasonable notice of the time and place of the hearing; the

employee is entitled to appear in person and by counsel before the commission and to present his case; if the commission affirms the earlier action taken against him, the employee is then entitled to a further hearing before the superior court of that county on the question of whether or not such action was taken in good faith for cause.

That ordinance clearly embodies all the safeguards that might reasonably be anticipated to assure the employee that his rights will not be diminished by arbitrary or tyrannical action, nor produced on a fundamentally wrong basis. They are the same protective devices afforded by RCW 41.12, none less, and the appellants availed themselves of them. They were represented by legal counsel at all times, and those attorneys made extensive use of their cross-examination rights; the appellants each testified and were given full opportunity to present their case; at no time during the commission hearing did they claim procedural inadequacies, nor have they indicated to this court how they were prejudiced by a claimed absence of satisfactory rules of procedure. Our examination of the record assures us that they were not prejudiced.

Next, it is claimed that the commission committed error by failing to rule on the question of whether it had jurisdiction to hear the cause. The record indicates otherwise. In response to that contention, the commission chairman stated: "As far as jurisdiction, I have ruled against you. In our minds we believe we have jurisdiction, and unless you have something else you want to present at this time, I think we should go on with this hearing." Incidentally, the basis of appellants' argument for claiming lack of jurisdiction was an improper service of the accusatory charge, an argument earlier in this opinion found to be wanting.

Appellants then complain that the commission considered evidence obtained outside the record and based its decision in part on that evidence. Interestingly, the evidence they claim was received in that fashion was described by the commission chairman as "they have been good officers for a period of time, nothing against their record." If that was error, it was harmless error.

■ Nor were appellants prejudiced by the fact that the chief of police was the acting secretary and police examiner of the civil service commission. Even assuming that he was pressing for the discharge of appellants, his standing in the total proceedings was of a limited nature: he could make a recommendation to the city manager, the appointing power; he could be a witness at the commission hearing; and he could perform certain perfunctory duties as the acting secretary of the commission. He had no further authority with respect to the proceedings and particularly no power of ultimate decision. In fact, the record shows that his recommendations to the city manager were only partially followed.

We have considered the remaining assignments of error and find them to be without merit. We have particularly found that the appellants received a complete and fair hearing under the controlling law and that there was substantial competent evidence to support the findings of the civil service commission.

The judgment is affirmed.

HUNTER, C. J., HAMILTON and NEILL, JJ., and JOHNSEN, J. Pro Tem., concur.